FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JAN 2 3 2024

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>          )<br>  Plaintiff, )<br>          )<br>vs. )<br>          )<br>**TERESA MCCOWN**, )<br>          )<br>  Defendant. )<br>          )<br>          )<br>          ) | CRIMINAL NO. 24-0091 DHU<br><br>Count 1: 30 U.S.C. §§ 1719(d)(1) and 1720: Violations of Federal Royalty Management and Enforcement (Oil and Gas);<br><br>Counts 2-9: 18 U.S.C. § 1343: Wire Fraud. |

INDICTMENT

The Grand Jury Charges:

Background

1. Between on or about January 24, 2017, and on or about June 5, 2023, **TERESA MCCOWN** owned M&M Production & Operation, Inc. (M&M) and Shoreline Oil & Gas Company (Shoreline). M&M is incorporated in the State of New Mexico as a domestic profit corporation and Shoreline is registered in New Mexico as a foreign for-profit corporation originally incorporated in Colorado. The New Mexico Secretary of State Corporations database lists the corporations' business address at **MCCOWN's** home address in Farmington, NM.

2. M&M and Shoreline are each in the business of extracting oil and gas from land leased to the companies by the federal government, the Navajo Nation, and the Jicarilla Apache Nation. Through the two companies, **MCCOWN** operated multiple leases on federal land and in Indian Country. M&M's leases included:

- 17 Federal leases with 35 associated wells within the jurisdiction of the Bureau of Land Management's (BLM) Farmington Field Office;

- 6 Indian Country leases with six associated wells within the jurisdiction of the BLM's Farmington Field Office;

- 1 Federal lease with one associated well within the jurisdiction of the BLM's Rio Puerco Field Office; and

- 6 Indian Country leases with 19 associated wells within the jurisdiction of the BLM's Rio Puerco Field Office.

Shoreline's leases include(d) 3 Indian Country leases with 15 associated wells within the jurisdiction of the BLM's Rio Puerco Field Office.

3. The Indian Country leases are all located within the exterior boundaries of the Navajo Nation and the Jicarilla Apache Nation. M&M and Shoreline are responsible for paying taxes and royalties to the Navajo Nation, Jicarilla Apache Nation, and the federal government for oil and gas extracted under those leases. M&M and Shoreline are required to report to the Department of Interior, the Navajo Nation, and the Jicarilla Apache Nation the amount of oil and gas extracted from the leases and the revenue derived from sales of those materials.

4. After oil and gas is extracted, it is processed by refiners. M&M and Shoreline sold extracted oil and gas to refiner Tristar Production LLC.

5. At all times material to this Indictment, M&M and Shoreline were required to submit Report of Sales and Royalty Remittance reports (Form ONRR-2014) and Oil and Gas Operations Reports (OGORs) to the Office of Natural Resources Revenue (ONRR) at the United States Department of the Interior. The ONRR-2014 reports the quantity and quality of the production (whether oil or gas) when measured at a BLM royalty settlement point. OGORs detail how much oil and gas is produced at each lease and are sub-divided by well numbers. This

information is required to determine royalties due to the Navajo Nation, the Jicarilla Apache Nation, and the federal government.

6. ONRR-2014s and OGORs are submitted to ONRR electronically via ONRR's e-Commerce website. The electronically submitted forms are transmitted over the internet and interstate wire to servers in Raleigh, North Carolina. ONRR employees in Lakewood, Colorado then access the same data through an internal networking system for overseeing production reporting and to process royalty payments.

7. Individuals seeking to access and enter information into ONRR's e-Commerce system must submit an Electronic MRMSS Application Request Forms (EMARFs). When the EMARF is submitted, an applicant must agree to ONRR's Acceptable Use Policy by which the applicant agrees to never enter unauthorized, inaccurate, or false information into the system. The EMARF further warns that a violation of ONRR's AUP may result in criminal prosecution. After completing this process, authorized users are provided with user IDs to electronically access the system.

8. User logins into ONRR's e-Commerce system are authenticated and authorized via software implemented in the Minerals Revenue Management Support System (MRMSS). To access the MRMSS, a user must confirm: "I am authorized to report for this Reporter and certify that the electronic data transmitted is valid, accurate, complete, and accept responsibility for such data as outlined in the ONRR, Electronic Reporting Policies under section Enforceability…."

Scheme to Defraud

9. At all times material to this Indictment, **MCCOWN** was responsible for reporting and providing an accurate accounting of mineral production—including oil and gas extraction—from Federal and Indian Country lands leased by M&M and Shoreline. **MCCOWN** was also

responsible for the payment of royalties to the mineral interest owners for her share of the minerals removed from the leased lands by M&M and Shoreline. As such, **MCCOWN** was required to submit the OGORs and ONRR-2014s to account for all oil and gas produced from Federal and Indian lands. Additionally, **MCCOWN** was required to submit royalty payments to ONRR and to the lease owners based on the amount and value of oil and gas produced from the leased lands.

10. **MCCOWN** submitted EMARFs requesting access ONRR's e-Commerce website on behalf of M&M and Shoreline. For example, **MCCOWN** submitted three EMARFs to access ONRR's e-Commerce website as a representative of M&M on February 1, 2016, September 27, 2016, and January 10, 2020, and a separate EMARF for Shoreline on September 2, 2020. In those applications, **MCCOWN** checked the box acknowledging that EMARF was for e-Commerce reporting, and she identified herself as the respective company's "Primary Industry Representative." **MCCOWN** also agreed to abide by ONRR's Acceptable Use Policy which included a pledge not to submit inaccurate or false information and warning of potential criminal penalties for entering false or inaccurate information in the e-Commerce system.

11. After submitting the EMARFs and gaining access to the eCommerce system, **MCCOWN** filed the OGOR and ONRR-2014 forms detailed herein for M&M and Shoreline.

12. Tristar Production LLC, the refiner of oil and gas extracted by M&M and Shoreline, also submitted information to ONRR and other regulatory agencies. Information submitted by Tristar Production revealed that more than 400 of the OGOR and ONRR-2014 reports filed by **MCCOWN** regarding extraction of oil and gas from Indian Country and Federal leases were inaccurate. More specifically, **MCCOWN** had under-reported oil and gas production from the leased Indian Country and Federal lands.

13. In March 2021, ONRR issued a Notice of Noncompliance under 30 C.F.R. § 1241.50 to **MCCOWN** for failing to report M&M's production of oil and gas from Federal and Indian properties from July 2019 through January 2021. The notice advised **MCCOWN**: "As an operator of a Federal or Indian lease or agreement, M and M is required to electronically submit accurate, complete, and timely forms ONRR-4054 (See 30 CFR §§ 1210.101-1210.104). If an error in a report previously submitted is discovered, under CFR § 1210.30, an accurate and complete amended report must be submitted within 30 days of the discovery of the error." This Notice of Noncompliance was delivered to **MCCOWN** by service of process on April 6, 2021.

14. ONRR is authorized under 30 C.F.R. § 1241.52 to issue civil penalties for failure to correct violations identified in a Notice of Noncompliance. The civil penalties take the form of Failure to Correct Civil Penalties (see 30 U.S.C. § 1719). Such civil penalties are imposed for periods between service of a Notice of Noncompliance and the date compliance is achieved. Following service of the Notice of Noncompliance on April 6, 2021, **MCCOWN** did not correct the identified violations. More specifically, **MCCOWN** did not take measures to correct under-reporting and accurately report oil and gas extraction from leased Federal and Indian lands. Therefore, on July 7, 2022, ONRR assessed a Failure to Correct Civil Penalties. The penalty calculated through April 7, 2022, was $522,372.00.

15. ONRR is authorized under 30 C.F.R. § 1241.60 to assess Immediate Liability Civil Penalties without prior notice as authorized by 30 U.S.C. § 1719. In October 2020 and July 2022, ONRR assessed Immediate Liability Civil Penalties against M&M and Shoreline for their failure to pay royalties due to Federal and Indian landowners.

16. ONRR held pre-penalty teleconferences with **MCCOWN** on September 2, 2020, and March 11, 2022, to discuss the civil penalties assessed in the NONCs and ILCPs and any

mitigating circumstances that may have prevented M&M from complying with the prescribed deadlines to correct inaccurate reporting. During those teleconferences, **MCCOWN** acknowledged M&M and Shoreline's failure to accurately report data.

17. Despite **MCCOWN's** acknowledgements, she did not correct or supplement the inaccurate or incomplete ONRR-2014 and OGORs. The fraudulent misrepresentations and omissions in ONRR-2014 and OGORs filed by **MCCOWN** during the period January 24, 2017, and on or about June 5, 2023, have not been corrected; the filed reports remain misleading and other required reports are missing entirely.

18. By filing ONRR-2014 and OGORs containing false information, and by failing to file such reports, MCCOWN defrauded the United States, the Navajo Nation, and the Jicarilla Apache Nation of taxes and royalties due to them for oil and gas extracted under M&M and Shoreline's leases of Federal and Indian lands.

## Count 1

The allegations set forth in paragraphs 1-18 of this Indictment are incorporated as part of Count 1 as if fully re-alleged herein.

Between on or about January 24, 2017 and on or about June 5, 2023, in San Juan County, in the District of New Mexico, the defendant, **TERESA MCCOWN**, a person required to prepare, maintain, and submit correct and accurate reports, notices, affidavits, records, data, and other written information for her oil and gas wells in Federal and Indian minerals, knowingly and willfully prepared, maintained, and submitted false, inaccurate, and misleading reports, notices, affidavits, records, data, and other written information for oil and gas wells in Federal and Indian minerals.

In violation of 30 U.S.C. §§ 1719(d)(1) and 1720.

Counts 2-9

The allegations set forth in paragraphs 1-18 of this Indictment are incorporated as part of Counts 2 through 9 as if fully re-alleged herein.

Between on or about January 24, 2017, and on or about June 5, 2023, in San Juan County, District of New Mexico, and elsewhere within the jurisdiction of this Court, the defendant, **TERESA MCCOWN**, knowingly and willfully devised and executed a scheme to defraud the United States, the Navajo Nation, and the Jicarilla Apache Nation of money due to them under M&M Production & Operation, Inc., and Shoreline Oil & Gas Company's leases for authorizing the extraction of oil and gas from Federal and Indian minerals. As part of and in furtherance of that scheme, **MCCOWN** submitted Reports of Sales and Royalty Remittance (Form ONRR-2014) and Oil and Gas Operations Reports (OGORs) to the Office of Natural Resources Revenue (ONRR) of the United States Department of Interior containing false information and fraudulent representations. More specifically, the Form ONRR-2014 reports and OGORs contained false information and fraudulent representations under-reporting the quantity and quality of oil and gas extracted from Federal and Indian Lands under M&M and Shoreline's leases.

On or about the dates specified below as to Counts 2 through 9 respectively, in the District of New Mexico and elsewhere, **MCCOWN,** for the purpose of executing the scheme to defraud, caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals and sounds.

| Count | Date | Description |
|---|---|---|
| 2 | February 25, 2019 | **TERESA MCCOWN** caused a Report of Sales and Royalty Remittance reports (Form ONRR-2014) containing material misrepresentations regarding gas production under lease 5250057530 for the month of October 2018 to be transmitted |

| | | |
|---|---|---|
| | | by means of the interstate wire to the Office of Natural Resources Revenue. |
| 3 | February 25, 2019 | **TERESA MCCOWN** caused a Report of Sales and Royalty Remittance reports (Form ONRR-2014) containing material misrepresentations regarding gas production under lease 5250057560 for the month of October 2018 to be transmitted by means of the interstate wire to the Office of Natural Resources Revenue. |
| 4 | April 9, 2019 | **TERESA MCCOWN** caused an Oil and Gas Operations Reports (OGOR) containing material misrepresentations regarding gas production under lease 5250057560 for the month of December 2018 to be transmitted by means of the interstate wire to the Office of Natural Resources Revenue. |
| 5 | April 9, 2019 | **TERESA MCCOWN** caused an Oil and Gas Operations Reports (OGOR) containing material misrepresentations regarding gas production under lease 5250057570 for the month of December 2018 to be transmitted by means of the interstate wire to the Office of Natural Resources Revenue. |
| 6 | April 9, 2019 | **TERESA MCCOWN** caused an Oil and Gas Operations Reports (OGOR) containing material misrepresentations regarding gas production under lease 5250057600 for the month of December 2018 to be transmitted by means of the interstate wire to the Office of Natural Resources Revenue. |
| 7 | April 10, 2019 | **TERESA MCCOWN** caused an Oil and Gas Operations Reports (OGOR) containing material misrepresentations regarding gas production under lease 5250057560 for the month of January 2019 to be transmitted by means of the interstate wire to the Office of Natural Resources Revenue. |
| 8 | April 10, 2019 | **TERESA MCCOWN** caused an Oil and Gas Operations Reports (OGOR) containing material misrepresentations regarding gas production under lease 5250057570 for the month of January 2019 to be transmitted by means of the interstate wire to the Office of Natural Resources Revenue. |
| 9 | April 10, 2019 | **TERESA MCCOWN** caused an Oil and Gas Operations Reports containing material misrepresentations regarding gas production under lease 5250057600 for the month of January 2019 to be transmitted by means of the interstate wire to the Office of Natural Resources Revenue. |

|   |   |   |
|---|---|---|
|   |   |   |

All in violation of 18 U.S.C. § 1343.

## FORFEITURE ALLEGATION

The allegations set forth in paragraph 1 through 18 and Counts 2 through 9 of this Indictment incorporated as part of this section of the Indictment as if fully re-alleged herein for the purpose of alleging forfeiture to the United States pursuant States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of any offense in violation of 18 U.S.C. § 1343, defendant **TERESA MCCOWN** shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, or a conspiracy to commit such offense. The property to be forfeited includes, but is not limited to, the following:

1. <u>Money Judgment</u>: A sum of money representing the property constituting or derived from proceeds traceable to the offense; and

2. <u>Substitute Assets</u>: If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture pursuant to 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c) of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL:

/s/
FOREPERSON OF THE GRAND JURY

Assistant United States Attorney